UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

FINANCIAL GUARANTY INSURANCE CO.,

                    Plaintiff,

     - against -

THE PUTNAM ADVISORY COMPANY,

                    Defendant.

----------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-10-13
```

12 Civ. 7372 (RWS)

OPINION

A P P E A R A N C E S :


          Attorneys for Plaintiff Financial Guaranty
          Insurance Co.

          QUINN EMANUEL URQUHART & SULLIVAN, LLP
          51 Madison Avenue, 22nd Floor
          New York, NY  10010
          By:  Peter E. Calamari, Esq.
               A. William Urquhart, Esq.
               Sean P. Baldwin, Esq.


          Attorneys for Defendant The Putnam Advisory Co., LLC

          MILBANK, TWEED, HADLEY & MCCLOY LLP
          1 Chase Manhattan Plaza
          New York, NY 10005
          By:  James N. Benedict, Esq.
               Sean M. Murphy, Esq.
               Thomas A. Arena, Esq.
               Robert C. Hora, Esq.
               William P. Gross, Esq.

**Sweet, D.J.**

Defendant The Putnam Advisory Company, LLC ("Putnam" or "Defendant") has moved for dismissal of the amended complaint ("AC") of plaintiff Financial Guaranty Insurance Company ("FGIC" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) ("12(b)(6)") for failure to state a claim.  Based upon the conclusions set forth below, the Defendant's motion is granted and the AC is dismissed with leave to amend within twenty days.

## Prior Proceedings

On October 1, 2012, FGIC filed a complaint against Putnam in which it asserted causes of action for fraud, negligent misrepresentation and negligence.  FGIC subsequently filed an amended complaint ("AC") that asserted the same claims. On December 21, 2012, Putnam filed the instant motion to dismiss the AC.  The motion was heard and marked fully submitted on March 21, 2013.

2

**The Facts**

Except where otherwise noted, the facts below are drawn from the AC and the documents upon which it relies.  All of the facts alleged in the AC are deemed to be true for the purposes of the instant motion to dismiss.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

In July 2006, Putnam and non-party Calyon began marketing a collateralized debt obligation ("CDO") called Pyxis ABS CDO 2006-1 ("Pyxis"), which was based upon a mixture of actual and synthetic residential mortgage-backed securities ("RMBS").  AC ¶ 2.  In furtherance of the marketing effort, Putnam prepared certain portions of the Pyxis offering documents that were sent to potential investors.  Id. ¶ 3.  The portions prepared by Putnam stated that the collateral for the Pyxis portfolio was to be chosen solely by Putnam, and further represented that Putnam was an experienced, respected, and putatively independent asset management firm.  Id.

Relying on these representations by Putnam, FGIC decided to engage in a transaction (the "Pyxis Guaranty") wherein it agreed to provide insurance on a $900 million "Super

3

Senior" swap transaction between Pyxis and Calyon.  Id. ¶¶ 7-9.
Pursuant to this transaction, FGIC agreed that in the event that
Pyxis defaulted, FGIC would make all payments owed by Calyon
under its swap with Pyxis.  Id.

According to FGIC, the representations that Putnam
made regarding its role in selecting the collateral for the
Pyxis portfolio were false.  Id. ¶ 4.  In fact, Putnam had
knowingly ceded control over the collateral selection process to
non-party Magnetar Capital LLC ("Magnetar"), a hedge-fund
manager that was a net-short investor in Pyxis and was therefore
incentivized to select weak collateral that would eventually
cause Pyxis to fail.  Id. ¶¶ 4-5.  Had FGIC known that Magnetar,
rather than Putnam, was controlling the collateral selection
process for Pyxis, FGIC would not have agreed to enter into the
Pyxis Guaranty.  Id. ¶ 11.

On April 30, 2008, the credit rating of the tranche of
Pyxis notes that FGIC had agreed to insure (the "Super Senior
Tranche") was downgraded from AAA to C.  Pyxis ultimately
defaulted, which resulted in FGIC incurring potential liability
of up to $900 million pursuant to its liabilities under the
Pyxis Guaranty.

4

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Polar Molecular Corp., 12 F.3d at 1174.  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual

5

allegation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

In addition, to the extent that the asserted claims sound in fraud, the complaint "must satisfy the heightened pleading requirements set forth in Rule 9(b), as well as the pleading standard mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)." <u>Anschutz Corp. v. Merrill Lynch & Co., Inc.</u>, 690 F.3d 98, 108 (2d Cir. 2012). Under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." <u>Id.</u> (quoting <u>Rombach v. Chang</u>, 355 F.3d 164, 170 (2d Cir. 2004)) (quotation marks omitted). Under the PSLRA, a plaintiff must (1) "specify each misleading statement," (2) "set forth facts on which a belief that a statement is misleading was formed," and (3) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." <u>Id.</u> (quoting <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 345 (2005)) (quotation marks and brackets omitted).

**FGIC Has Failed To State A Claim For Fraud**

    In order to state a claim for fraud under New York law, a plaintiff must allege "a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (2009).  In addition, "loss causation is an element of a New York common law fraud action." Gordon Partners v. Blumenthal, 293 Fed. Appx. 815, 818 (2d Cir. 2008) (citing Laub v. Faessel, 745 N.Y.S.2d 534, 536 (N.Y. App. Div. 2002)).  To adequately allege the loss causation element of a fraud claim, a plaintiff "must plead facts that indicate that the information concealed by the defendant['s] misrepresentations was the reason the transaction turned out to be a losing one." Dexia SA/NV v. Bear, Stearns & Co., Inc., --- F. Supp. 2d ---, No. 12 Civ. 4761 (JSR), 2013 WL 856499, at *8 (S.D.N.Y. Feb. 27, 2013) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994)) (quotation marks omitted).

    FGIC has contended that it has pled loss causation via its allegation "that the very wrong of which it complains – that the Pyxis collateral was selected by a net short investor with

7

interests adverse to long investors – caused the collateral to

be far more likely to default than that of a typical CDO, even

in the event of market-wide losses."  Plaintiff's Memorandum of

Law in Opposition to Defendant's Motion to Dismiss the Amended

Complaint ("Pl. Opp.") at 27-28 (citing AC ¶¶ 10, 13).  However,

this allegation is not adequately supported, as FGIC has not

buttressed it with facts sufficient to demonstrate that there

was *any* pool of collateral that could have avoided default while

still conforming to Pyxis' detailed eligibility criteria.  See

Lentell v. Merrill Lynch & Co., 396 F.3d 161, 174 (2d Cir. 2005)

("When the plaintiff's loss coincides with a marketwide

phenomenon causing comparable losses to other investors . . . a

plaintiff's claim fails when it has not adequately pled facts

which, if proven, would show its loss was caused by the alleged

misstatements as opposed to intervening events.").


        Since FGIC has not alleged facts sufficient to show

that the liabilities it incurred under the Pyxis Guaranty were

the result of "the information concealed by defendant['s]

misrepresentations" – *i.e.*, that Magnetar controlled the Pyxis

collateral selection process – rather than a consequence of the

general market downturn that coincided with the default of many

other CDOs during the same time period in which Pyxis failed,

8

see, e.g., Nat'l Comm'n on the Causes of the Fin. & Econ.
Crisis, The Financial Crisis Inquiry Report: Final Report 148
(2011) (stating that 91% of U.S. CDO securities had been
downgraded by the end of 2008),[1] it has failed to plead the loss
causation element of its fraud claim.  Dexia, 2013 WL 856499, at
*8.[2]


        FGIC has additionally contended that it has adequately
pled loss causation "by alleging facts that would allow a
factfinder to ascribe some rough proportion of the whole loss to
defendants' misstatements."  Pl. Opp. at 27 (quoting Lattanzia
v. Deloitte & Touche LLP, 476 F.3d 147, 158 (2d Cir. 2007)
(quotation marks and alterations omitted)).  This argument
suffers from the same flaw identified above – namely, that FGIC

---

[1] Judicial notice may be taken of the contents of the Financial
Crisis Inquiry Report pursuant to Fed. R. Evid. 201.  See In re
Countrywide Fin. Corp. Mortgage-Backed Sec. Litig., --- F. Supp.
2d ---, Nos. 2:11-ML-02265-MRP (MANx) & 2:12-CV-1059-MRP (MANx),
2013 WL 1189311, at *1 n. 1 (C.D. Cal. Mar. 15, 2013).

[2] In contrast, if FGIC had put forth allegations supporting its
suggestion that "the housing crisis . . . was itself the result
of widespread fraud by market participants such as Putnam," Pl.
Opp. at 28 n. 15, such allegations would have been sufficient to
adequately plead loss causation, because that theory posits that
Magnetar's scheme was the actual cause of the widespread CDO
failure.  However, beyond the bare and conclusory single-
sentence statement quoted above, the AC contained no allegations
sufficient to support such a theory of causality.

has failed put forth allegations supporting the contention that *any* part of FGIC's losses were caused by the alleged misrepresentation, rather than external market forces. Moreover, the AC is bereft of allegations purporting to assign even a "rough proportion" of the loss to Putnam's misrepresentations; in fact, it appears to allege that the entirety of FGIC's losses were the result of Putnam's misrepresentations.  See AC ¶ 13 ("The evidence is clear that FGIC's loss was not the result of neutral market forces.  It was instead the direct and intended result of Putnam's actions and those of Magnetar . . . .").  The percentages that FGIC has cited in its opposition brief to support this argument are found not in its pleading, but rather in an attorney declaration, see Pl. Opp. at 28 (citing the Declaration of Robert C. Hora in Support of Defendant The Putnam Advisory Company LLC's Motion to Dismiss the Amended Complaint ("Hora Decl."), Ex. 5), whose contents cannot be used to cure a defective complaint.  See, e.g., Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc., No. 12 Civ. 3599 (RWS), 2013 WL 866867, at *4 (S.D.N.Y. Mar. 8, 2013) ("[A] plaintiff may not supplement a deficient pleading through additional facts contained in affidavits").

Alternatively, FGIC contended that under New York law it is not required to plead loss causation because it is seeking only rescissory damages.  Pl. Opp. at 27.  However, that proposition has previously been rejected by this Court.  See Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 165 F. Supp. 2d 615, 627 n. 2 (S.D.N.Y. 2001) (holding that "[t]he absence of adequate causation is . . . fatal to a common law fraud claim under New York law," and therefore rejecting plaintiff's contention that "it should be able to proceed with its common law fraud claim because New York law does not require proof of loss causation where only rescission is sought").

Moreover, the case that FGIC has cited in support of its contention regarding loss causation and rescissory damages, MBIA Ins. Co v. Countrywide Home Loans Inc., 936 N.Y.S.2d 513 (Sup. Ct. N.Y. County 2012), is inapposite.  In MBIA, the court construed the defendant to have been an applicant for insurance and plaintiff to have provided insurance to the defendant, and expressly stated that given this "insurance context," its analysis of the plaintiff's fraud claim was "informed by New York common law and [New York] Insurance Law Sections 3105 and 3106."  Id. at 521.  In contrast, the defendant in the instant case, Putnam, did not apply for any insurance, nor did it enter

into any sort of contract – insurance-related or otherwise –
with FGIC.  Accordingly, MBIA's analysis is inapplicable here.

**FGIC Has Failed To State A Claim For Negligence Or Negligent
Misrepresentation**

     "New York strictly limits negligent misrepresentation
claims to situations involving 'actual privity of contract
between the parties or a relationship so close as to approach
that of privity.'"  Anschutz, 690 F.3d at 114 (quoting In re
Time Warner Inc. Sec. Litig., 9 F.3d 259, 271 (2d Cir. 1993)).
The same rule applies with respect to negligence claims.
Pension Committee of Univ. of Montreal Pension Plan v. Banc of
Amer. Sec. LLC, 446 F. Supp. 2d 163, 198-99 (S.D.N.Y. 2006).  In
the instant case, it is undisputed that there is no actual
privity between the parties; accordingly, the salient question
is whether the relationship between the two is sufficiently
close so as to "approach that of privity."

     FGIC has contended that its relationship with Putnam
was sufficiently "special" so as to serve as the basis for a
negligence or negligent misrepresentation claim because Putnam
possessed knowledge regarding the Pyxis Portfolio that was

superior to that of FGIC. AC ¶¶ 159-60. However, New York

courts have held that superior knowledge by a defendant does not

create the requisite special relationship where, as here, the

transaction at issue involved sophisticated commercial entities

acting in an arm's-length context.[3] See MBIA Ins. Corp. v.

Countrywide Home Loans, Inc., 87 A.D.3d 287, 297 (N.Y. App. Div.

2011) (finding that "[t]he claim that [the defendant] had

superior knowledge of the particulars of its own business

practices is insufficient to sustain [a] cause of action [for

negligent misrepresentation]" where the plaintiff "ha[d] failed

to allege facts showing that these sophisticated commercial

entities engaged in anything more than an arm's length business

transaction"); Sebastian Holdings, Inc. v Deutsche Bank AG, 78

A.D.3d 446, 447 (N.Y. App. Div. 2010) ("[The plaintiff]'s

alleged reliance on defendant's superior knowledge and expertise

. . . ignores the reality that the parties engaged in arm's-

length transactions pursuant to contracts between sophisticated

business entities that do not give rise to [the type of]

---

[3] Moreover, the Pyxis Pitchbook, upon which FGIC has alleged to
have relied, see AC ¶¶ 66-69, expressly stated that "[n]one of .
. .the Putnam Advisory Company, LLC . . ., or any of their
respective affiliates are acting as a financial adviser nor in
[a] fiduciary capacity [i]n respect of the transaction to any
investor . . . ." Hora Decl. Ex. 10 at 2.

fiduciary duties [necessary to support a negligent misrepresentation claim]").

FGIC has additionally contended that the Second Circuit's decision in Bayerische Landesbank v. Alladin Capital Mgmt. LLC, 692 F.3d 42 (2d Cir. 2012) establishes that its allegations are sufficient to establish the requisite special relationship between it and Putnam. Pl. Opp. at 28. However, as set forth below, Bayerische's holding is based in part upon factors that are not present here, and therefore is inapposite.

In Bayerische, the plaintiff, Bayerische Landesbank ("BL") had purchased notes sold by a CDO (the "Alladin CDO") that was structured, marketed and managed by defendant Alladin. 692 F.3d at 46.  The Court found that even though BL and Alladin were not in privity of contract, the relationship between the two was sufficiently close so as to support BL's negligent misrepresentation claim.  Id. at 59-61.  This conclusion was grounded in part upon the Court's holding that BL was a third-party beneficiary of the portfolio management agreement between Alladin and the issuer of the Alladin CDO.  See id. at 52-58, 60.  Here, FGIC has not alleged that it was a third-party beneficiary of the CMA, nor does the relevant language in the

14

CMA support such a determination.[4] Compare Bayerische, 692 F.3d
at 53 with Hora Decl., Ex. 2 at 14, 30.

    Moreover, the Bayerische Court's conclusion was
based in part upon allegations of certain direct representations
made by the defendant to the plaintiff, see 692 F.3d at 60,
whereas in the instant case, although there are allegations that
Putnam made direct representations to FGIC, see AC ¶¶ 74-76, the
offering memorandum upon which FGIC is alleged to have relied
expressly disclaims any representations other than those made in
the offering memorandum, and states that "if given or made, such
. . . representation must not be relied upon as having been
authorized by the . . . collateral manager . . . ."  Hora Decl.,
Ex. 1 at ii.[5]

---

[4] This distinction between the plaintiff in Bayerische and the
plaintiff here is not surprising, as the nature of FGIC's
involvement in Pyxis is materially different than that of BL in
the Alladin CDO; while BL actually purchased notes in the
Alladin CDO and therefore was a direct investor, FGIC merely
acted as a guarantor of a third-party swap between Calyon and an
FGIC subsidiary, see AC ¶¶ 7-9.

[5] Furthermore, the offering memorandum expressly states that "in
making an investment decision, investors must rely on their own
examination of the co-issuers and the terms of the offering,
including the merits and risks involved," Hora Decl., Ex. 1 at
iii, and indeed, FGIC appears to have heeded that warning, as it
has alleged that it conducted its own extensive due diligence by
"analyzing the ramped RMBS-backed portion of the Pyxis Portfolio
(91% of the ramped portfolio), reviewing each individual bond

Since FGIC has failed to allege facts showing the existence of a prior relationship with Putnam that was so special and close in nature so as to be "approach[ing] that of privity," Anschutz, 690 F.3d at 114, it has not stated a claim for negligence or negligent misrepresentation under New York law.  See SIPC v. BDO Seidman, LLP., 222 F.3d 63, 71 (2d Cir. 2000); MBIA, 87 A.D.3d at 297.

---

for originator, issuer and services strength and adequacy of internal credit enhancement in comparison to the credit profile of the underlying loan pools."  AC ¶ 78.

16

**Conclusion**

For the foregoing reasons, Putnam's motion to dismiss the AC is granted, with leave given to replead within 20 days.

It is so ordered.

New York, NY
September    , 2013

ROBERT W. SWEET
U.S.D.J.

17