```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
FINANCIAL GUARANTY INSURANCE
COMPANY,

      Plaintiff,

-against-

THE PUTNAM ADVISORY COMPANY, LLC,

      Defendant.

12 Civ. 7372 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiff, Financial Guaranty Insurance Company ("FGIC"), brings this action against Defendant, the Putnam Advisory Company, LLC ("Putnam"), asserting claims for fraud, negligent misrepresentation, and negligence. Compl., ECF No. 22. On September 21, 2018, both parties moved for summary judgment. ECF Nos. 110, 114. On September 10, 2019, the Court granted in part and denied in part Defendant's motion for summary judgment, denied Plaintiff's motion for summary judgment, and set the remaining claims in the case for trial on April 27, 2020. Summary Judgment Order, ECF No. 160. Nearly four months later, Putnam requests permission to file a supplemental motion for summary judgement on a "narrow issue," arguing that FGIC's claims are time-barred. Def. Ltr., ECF No. 226 at 1. On January 10, 2020, FGIC filed a response in opposition. Pl. Opp., ECF No. 231. Putnam filed a reply on January 13, 2020. Def. Reply, ECF No. 232. FGIC filed a sur-reply later that day. Pl. Sur-Reply, ECF No. 233. Upon review of the parties' submissions, and for the reasons stated below, Putnam's request is DENIED.

## BACKGROUND

  FGIC alleges that Putnam made a series of material misstatements about the makeup of Pyxis ABS CDO 2006-1, a Collateralized Debt Obligation ("CDO"), and Putnam's ability to independently pick the collateral for the CDO, in order to fraudulently induce FGIC to provide financial guaranty insurance (the "Pyxis Guaranty") for the CDO. Summary Judgment Order at 1–2. FGIC entered into the Pyxis Guaranty on October 3, 2006. *Id.* at 2.

  FGIC argues that in issuing the Pyxis Guaranty, it relied upon a target portfolio called the "Peach-Colored Spreadsheet" (the "PCS") provided on August 8, 2006 by Calyon Corporate and Investment Bank ("Calyon"), the structuring bank. *See id.* at 7, 20. On summary judgment, Putnam suggested that FGIC could not have reasonably relied on the August 8, 2006 PCS given that FGIC had subsequently received an updated target portfolio and was not formally committed until Pyxis closed in October. *Id.* at 22–23. FGIC's expert, however, opined that because of the two-step process in which these deals are arranged with insurers, as a practical matter, FGIC had committed to the deal after the Credit Application was approved on September 6, 2006 and FGIC emailed Putnam. *Id.* at 23. The Court noted that:

>Although in theory, FGIC could have reneged on the deal until October, it would have created chaos for investors and arrangers, and would have had extremely negative consequences for the insurer's ability to obtain future business because investors and arrangers made their own decisions to participate in the CDO in reliance on the insurer's commitment.

*Id.* (internal quotation marks and citation omitted). Mindful that "where the circumstances and facts underlying a plaintiff's reliance are subject to genuine dispute, courts are reluctant to summarily dispose of fraud claims on the basis of unreasonable reliance," *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 484 (S.D.N.Y. 2018), the Court rejected Putnam's motion for summary judgment with respect to whether FGIC's alleged reliance on the PCS was reasonable. Summary Judgment Order at 24.

## Discussion

FGIC was required to bring its fraud and negligence claims within six years from the date the claims accrued. *See* N.Y. C.P.L.R. § 213. According to Putnam, FGIC commenced this action on October 1, 2012, more than six years after FGIC was "committed to the transaction" on September 6, 2006, making FGIC's claims untimely. *Id.* FGIC disputes that the statute of limitations began to run on September 6, 2006 because they "were not *contractually* committed to the Pyxis Guaranty until the contracts were executed on October 3, 2006." Pl. Opp. at 1.

Putnam's request to file a supplemental summary judgment motion on the issue of whether the fraud and negligence claims are time barred faces a number of procedural hurdles that warrant denial. First, Putnam has waived any statute of limitations defense by failing to raise it in its two motions to dismiss, ECF Nos. 10, 24, or its answer, ECF No. 45. *S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x. 752, 754 (2d Cir. 2016) ("A claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the complaint." (internal quotation marks and citation omitted)). Second, Putnam first raised this argument in its summary judgment briefing, in a footnote. *See* ECF No. 136 at 13 n.9; *see also* Def. Ltr. at 2 n.1. The Court did not expressly address this argument in its summary judgment order because courts "routinely decline[] to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14 Civ. 10104, 2017 WL 3973951, at *20 n.36 (S.D.N.Y. Sept. 7, 2017). By raising the argument in a footnote, Putnam waived the argument. *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 8, 2007) ("Arguments which appear in footnotes are generally deemed to have been waived."). And although "[d]istrict courts enjoy considerable discretion in entertaining successive dispositive motions," *Elliott v. City of Hartford*, 649 F. App'x 31, 33 (2d Cir. 2016) (internal quotation marks, alteration, and citation omitted), the Court declines to exercise such discretion here. Accordingly, Defendant's request to file a supplemental summary judgment motion is DENIED on procedural grounds.

In any event, were the Court to permit Defendant to submit a supplemental summary judgment motion, the Court would likely deny the motion on the merits. A fraudulent inducement claim accrues when the plaintiff enters into the contract or otherwise completes

the act that the fraudulent statements meant to induce. *See, e.g., Prichard v. 164 Ludlow Corp.*, 854 N.Y.S.2d 53, 54 (1st Dep't 2008) (fraudulent inducement claim accrued when plaintiffs "entered into the contract . . . i.e., they completed the act that the fraudulent statements had induced"); *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 748 (2d Cir. 1979) (for fraudulent inducement of a contract, "the cause of action accrues when the document is executed and when the party alleging fraud has given consideration and thus suffered damage" (internal quotation marks and citation omitted)); *see also Lloyd's v. Milberg LLP*, 2009 WL 3241489, at *5 (S.D.N.Y. Sept. 30, 2009) ("When the plaintiff alleges fraud in the inducement to purchase an insurance policy, the six-year limitations period begins to run on the date the policy is purchased.") (collecting cases). The Pyxis Guaranty contracts were executed on October 3, 2006, the date the Pyxis Guaranty was issued. Summary Judgment Order at 11; *see also* Pl. Opp. at 1.

Here, the relevant act for statute of limitation purposes is the issuance of the Pyxis Guaranty. As Plaintiff's expert opined, deals such as the Pryxis Guaranty take place in a two-step process. Summary Judgment Order at 23. The process by which an insurer agreed to participate in a CDO, such as Pyxis, included: "(a) the 'economic phase,' which involved the [insurer's] analysis of the manager, the portfolio, the economic features of the structure, and the risk-reward relationship; and (b) the 'documentation phase,' which involved negotiation of the transaction documents, including the indenture, collateral management agreement, and the insurance agreements." Fiachra O'Driscoll Rebuttal ¶ 18, Baldwin Decl. I. Ex. 57, ECF No. 117-57. By September 6, 2012, the date that Putnam argues triggered the start of the statute of limitations, only the "economic phase" of the transaction had been completed; FGIC had yet to complete the "documentation phase" and actually issue the Pryxis Guaranty. *Id.* FGIC had not, therefore, "completed the act that the fraudulent statements" sought to induce. *Prichard*, 854 N.Y.S.2d at 54.

In order to prove fraud under New York law, a plaintiff must establish reliance, along with other elements. *See* Summary Judgment Order at 13 (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)). In explaining why it relied on the PCS and other pre-September 6, 2006 target portfolios, FGIC pointed out that it became practically committed to the Pyxis Guaranty on September 6, 2006. Pl. Opp. at 2. However, FGIC did not argue, and the Court did not hold, that FGIC became contractually committed any time prior to the Pyxis Guaranty being issued on October 3, 2006. In suggesting otherwise, Defendant conflates steps taken in preparation for entering into a contract, with actually entering the contract.

## Conclusion

Accordingly, Putnam's request to file a supplemental motion for summary judgement is DENIED.

SO ORDERED.

Dated: January 17, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge

3