Selendy & Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212 390 9000

Sean Baldwin
Partner
212 390 9007
sbaldwin@selendygay.com



June 22, 2020

<u>Via ECF</u>

Hon. Lewis J. Liman
United States District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Financial Guaranty Insurance Company v. The Putnam Advisory Company, LLC*, No. 12-cv-7372 (S.D.N.Y.)

Dear Judge Liman,

We write on behalf of Plaintiff Financial Guaranty Insurance Company ("FGIC") pursuant to the Court's Order dated June 19, 2020.  ECF No. 313.

Putnam ignores that trials may only be bifurcated in "particularly compelling" and "exceptional" cases, *Kos Pharmas., Inc. v. Barr Labs, Inc.*, 218 F.R.D. 387, 391 (S.D.N.Y. 2003), and that to determine whether to bifurcate courts must consider: "(1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is not granted." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).  These factors weigh strongly against bifurcation.

Putnam bases its argument on the claim that the elements FGIC must prove may be segregated, and an adverse ruling on one will obviate the need for trial on the others.  *See* ECF No. 311 at 1.  Putnam's argument proves too much.  The mere fact that an adverse ruling on one legal element of FGIC's claims would eliminate the need to consider others just means that each *legal element* is segregable; it does **not** justify bifurcation, because "the same could be said of every case." *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 67 (E.D.N.Y. 2007).

Hon. Liman
June 22, 2020

The *factual evidence* on each of the elements here is not segregable but is inextricably intertwined. The evidence that Putnam seeks to keep from the Court through bifurcation—primarily, that Putnam managed Pyxis to further the equity investors' long-short correlation trading strategy at FGIC's expense—underpins each element of FGIC's claims and will be proved through the same testimony from the same witnesses. Putnam asserts that such evidence bears only on scienter. ECF No. 311 at 5. In fact, it bears on all elements, including those Putnam specifically asks to try first—"attribution" and transaction causation.

**Putnam's Knowledge and Intent Concerning the PCS.** At trial, FGIC will prove that Putnam is responsible for the misrepresentations in the PCS by showing that Putnam knew and intended that false portfolio information be conveyed to FGIC. *Pasternack v. Lab Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (2016) ("[I]ndirect communication can establish a fraud claim, so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it."). FGIC will also show Putnam knowingly omitted to correct these misrepresentations, which further establishes its responsibility for them. ECF No. 308 at 134-137. At summary judgment, the Court rejected Putnam's argument that such proof is insufficient to establish Putnam's liability for these misrepresentations. ECF No. 160 at 15-17. Putnam ignores this law of the case.

Setting aside the fact that Putnam was solely responsible for collateral selection and was responsible for all target portfolios whether sent to the rating agencies or to FGIC, FGIC will offer ample evidence of Putnam's intentional deception. To prove Putnam's knowledge of the misrepresentations in the PCS and its intent that they be conveyed to, and relied upon by, FGIC, FGIC will prove: (1) Putnam understood the equity investors' long-short correlation trading strategy required a portfolio that was as highly correlated as possible with the subprime, pre-2005H2, and low-rated RMBS the equity investors were shorting; (2) Putnam understood FGIC required a portfolio that was as *uncorrelated* as possible (subject to the eligibility criteria) with *the same assets*, and would not accept the tail risk inherent in the equity investors' portfolio; and (3) Putnam needed both the equity investors and FGIC to participate in order to close Pyxis. Putnam resolved this dilemma by complying with the equity investors' wishes (to secure additional business) while concealing its plans from FGIC. Thus, when FGIC asked Calyon and then Putnam (expressly confirmed by Menhenett's contemporaneous email) for a detailed target portfolio that would show the credit characteristics of the portfolio Putnam intended to acquire, Putnam was forced to misrepresent the portfolio's credit profile to FGIC, and it used Calyon as a conduit to do so. The inference that Putnam knew and intended the PCS to be false is strongly supported, not only by Putnam's direct communications with FGIC and Calyon concerning management of FGIC's tail risk concerns and the creation of the PCS (to be proved by testimony from Menhenett, Bell, Van Tassel, Malm, and Rekeda), but by the entire background of Putnam's knowing cooperation with the equity investors' strategy and the constraints such

2

Hon. Liman
June 22, 2020

cooperation imposed. This evidence explains *why* Putnam was motivated to convey false information to FGIC, and supports the inference that Putnam intentionally participated in the creation of a materially false target portfolio. The evidence of the equity investors' strategy, and their control over portfolio construction to further that strategy, will be based on the testimony of Bell, Van Tassel, Prusko, Henriques, O'Driscoll, Snow, and Longstaff. Thus, the testimony of virtually all witnesses in the case is required to resolve Putnam's knowledge and intent, precluding bifurcation.

**Transaction causation.** Proof of Putnam's cooperation with Magnetar also bears on transaction causation. FGIC can prove transaction causation by showing it would not have issued the Pyxis Guaranty on the terms it did absent Putnam's misrepresentations. ECF No. 160 at 45. Evidence of Magnetar's involvement with portfolio construction, and Putnam's efforts to conceal that involvement, is directly relevant to FGIC's willingness to attach at 40%. Had FGIC known not only that the portfolio would be materially more correlated and riskier than disclosed, but that it would be so precisely because of the undisclosed influence of the adversely-interested equity investors, FGIC would likely have declined to participate in Pyxis at all, and would certainly not have done so on the same terms. *See* Menhenett Dec. ¶ 271 ("Had I further understood that the equity investors had dictated that Putnam apply undisclosed portfolio constraints to further their long-short correlation trading strategy, I would likely have concluded that FGIC should not insure Pyxis at any attachment point."); Adams Dec. ¶ 61 ("I would likely not have been able to approve FGIC's participation at all" had I known about the equity investors' involvement); Finkel Dec. ¶ 36 ("[H]ad I known in addition that the reason the portfolio would be less diversified and riskier was that the collateral mix was dictated by equity investors who were using Pyxis to help them pursue a long-short correlation trading strategy, … I may not have been able to approve FGIC's participation at all."). To prove this, FGIC will rely on the same testimony referenced above from Bell, Van Tassel, Prusko, Henriques, O'Driscoll, and Longstaff, again precluding bifurcation.

Based on indisputable evidence, FGIC can prove, at a minimum, that Putnam acted negligently. ECF No. 308 at 1-2. Putnam seeks to prevent the Court from considering evidence of the true nature of Pyxis and the equity investors' influence over the deal because that evidence makes clear Putnam did not just act negligently, but fraudulently. That evidence is not only relevant to the elements Putnam singles out, but to whether actionable misrepresentations and omissions were made, whether FGIC reasonably relied on such misrepresentations, and whether the misrepresentations caused FGIC's losses—in other words, FGIC's entire fraud claim.

Putnam cannot use Rule 42(b) to obtain reconsideration of Judge Torres' summary judgment rulings and to exclude evidence that is highly relevant to the elements FGIC must prove. Bifurcation of this trial would only undermine efficiency and prejudice FGIC. It should be denied.

Hon. Liman
June 22, 2020

Sincerely,

Sean Baldwin
Partner

Encl: All Counsel of Record (*via* ECF)