UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                      :

FINANCIAL GUARANTY INSURANCE COMPANY,  :

                        Plaintiff,                                            :

                                                                            :       12-cv-7372 (LJL)

               -v-                                         :

                                                                            :           ORDER

THE PUTNAM ADVISORY COMPANY, LLC,       :

                       Defendant.                                         :

                                                                            :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/1/2020

LEWIS J. LIMAN, United States District Judge:

This order addresses the parties' competing motions to strike declarations submitted by the prospective witnesses at trial. *See* Dkt. Nos. 334, 336. Trial of this action is scheduled to begin on July 6, 2020. It is ORDERED that the parties shall provide the Court with revised declarations conforming to the below rulings by Friday, July 3, 2020 at 5:00 p.m.

Longstaff

Plaintiff moves under Federal Rule of Evidence 702 to strike certain portions of the testimony of defense expert Francis Longstaff. Specifically, Plaintiff moves to strike the testimony of Longstaff that, at the time FGIC decided to insure Pyxis, FGIC assumed that the CDO would have a higher level of credit risk and greater likelihood of losses than it actually did based on the actual Pyxis portfolio. Longstaff also opines that FGIC insured other CDOs with greater credit risk than the actual Pyxis portfolio. *See* Dkt. No. 337 1–8 (requesting that the Court strike Longstaff's Declaration paragraphs 2–3, 64–65, 68, and Sections IV.B and IV.C of his initial declaration and paragraphs 2, 4, 5–6, 9, 15–19 of his supplemental testimony). Longstaff bases his testimony, in part, on the Pyxis credit application. Plaintiff argues that he

ignores the models referenced and summarized in that credit application and that, therefore, his testimony is unreliable.

Plaintiff has waived the objection to Longstaff's testimony based on Rule 702 by failing to object to it in its pre-trial *Daubert* motion. The proposed testimony is virtually identical to that disclosed in Longstaff's expert report. *See* Expert Report of Francis Longstaff AFF, PhD, CPA, CFA, Dkt. No 212-2 ¶¶ 142-177 (Section VI). The Court set a schedule for objections to expert testimony based on Federal Rules of Evidence 702 to 705 and *Daubert*, Dkt. No. 185, and Plaintiff filed a motion to exclude portions of Longstaff's testimony. Dkt. No. 191. That motion asked that the following portions of Longstaff's testimony be excluded: (1) FGIC's losses were caused by the financial crisis rather than Putnam's wrongdoing; (2) Putnam did not contribute to the financial crisis; and (3) the commutation payment attributable to Pyxis should have been smaller. None of these points is raised in Section VI of the Longstaff report, and Plaintiff did not ask that Section VI be excluded. The time for Plaintiff to make a *Daubert* objection has passed. *See United States v. Teva Pharm. USA, Inc.*, 2019 WL 1245656, at *12 (S.D.N.Y. Feb. 27, 2019); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *3 (S.D.N.Y. Dec. 3, 2002).

In addition, even if the application were timely, it is not meritorious. Longstaff bases his testimony on the credit application before FGIC at the time it decided to go forward with the transaction at a 40% attachment point. That constitutes sufficient facts and data to ground his opinion. Even if he did not review the underlying models, that argument goes, if at all, to weight and not admissibility. *See, e.g.*, *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) ("Questions over whether there is a sufficient factual basis for an expert's testimony may go to weight, not admissibility.") (citation and internal quotations

omitted); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995); *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992) ("[B]ecause the federal rules emphasize liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusion") (citation and internal quotation omitted).

Plaintiff also moves to strike a number of opinions of Longstaff on the grounds that they are irrelevant and not helpful. *See* Fed R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence"); Fed. R. Evid. 701(a) (expert testimony only admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue"). The paragraphs to which Plaintiff objects on these grounds and the Court's rulings are as follows:

- **Paragraphs 93–113 of the Longstaff Declaration (regarding Magnetar's correlation trading strategy).** The Court reserves judgment on relevance until after the conclusion of Plaintiff's case, albeit not for the reasons offered by Plaintiff. The Court previously granted summary judgment to Defendant on all claims except those that the PCS contained a misrepresentation. *See* Dkt. No. 281 at 19 ("The Court granted Defendant's summary judgment motion with respect to Plaintiff's misrepresentation claims except for those arising from the PCS."). Accordingly, it is not clear at this stage that any evidence with respect to Magnetar will be relevant or admissible in Plaintiff's case, particularly in Phase 1 of the trial. The Court will revisit the admissibility of these paragraphs in Defendant's case after the close of Plaintiff's case.

- **Paragraphs 103–113 of the Longstaff Declaration (regarding whether FGIC was put on notice of Magnetar's correlation trading strategy based on industry**

**publications).**  The Court also reserves judgment pending the conclusion of Plaintiff's case for the reasons stated above.

Plaintiff also moves to strike certain portions of Longstaff's declaration in which he responds to opinions previously proffered by Plaintiff's expert Fiachra T. O'Driscoll.  *See* Dkt. No. 337 at 7 (moving to strike paragraphs 5, 7, 115–18, 137, 139, 144, 146–55).  Plaintiff notes that O'Driscoll is no longer offering the opinions to which Longstaff responds.  Defendant responds that Plaintiff is still making the arguments to which Longstaff responds, but through its fact witnesses.  Longstaff bases his opinions in the challenged paragraphs on evidence that is independently admissible and that is purportedly inconsistent with Plaintiff's arguments. Defendant can still refer to those exhibits and make the arguments made by Longstaff.  However, unless O'Driscoll proffers the disputed opinions during Plaintiff's case, Longstaff cannot offer opinions in response in the form that O'Driscoll's opinions are inconsistent with the evidence. The motion is granted and those paragraphs struck subject to reconsideration should Plaintiff put the opinions in those paragraphs at issue through expert testimony of its own.  *See LaSalle Bank Nat. Ass'n v. CIBC Inc.*, 2012 WL 466785, *19–20 (S.D.N.Y. Feb. 14, 2012); *United States Securities & Exchange Commission v. Mudd*, 2016 WL 2593980, at *7 n.14 (S.D.N.Y. May 4, 2016) (excluding rebuttal testimony that responded to excluded reports and testimony); *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *9 (S.D.N.Y Sept. 16, 2015) (same).

Finally, Plaintiff moves to exclude opinions of Longstaff that it claims were excluded by the Court's *Daubert* order at Dkt. No. 281.  The paragraphs to which Plaintiff objects on these grounds and the Court's rulings are as follows:

- **Paragraphs 175, 180, and 182 of the Longstaff declaration.** The Court's *Daubert* order granted Plaintiff's motion to exclude Longstaff's testimony rebutting the claim that Magnetar's alleged influence on Defendant's selection of assets for the Pyxis portfolio caused Pyxis to suffer greater losses than it would have but for Magnetar's influence. *See* Dkt. No. 281 at 18–19. The Court concluded that evidence that Magnetar's influence caused greater losses (and therefore evidence rebutting that claim) was not relevant because claims regarding Magnetar's alleged influence and the impact of that alleged influence on the performance of Pyxis were no longer in the case. "The Court granted Defendant's summary judgment motion with respect to Plaintiff's misrepresentation claims except for those arising from the PCS. . . . The relevant inquiry in assessing Plaintiff's claim, therefore, is whether the assets Defendant selected for Pyxis performed differently than the assets Plaintiff believed were to be included, as indicated in the PCS. Dr. Longstaff's analysis does not help the trier of fact answer this question." *Id*. Paragraphs 175, 180 and 182 are in a portion of the Longstaff declaration headed "Magnetar's alleged influence on Putnam's collateral selection for Pyxis did not cause Pyxis's or FGIC's losses." The paragraphs are excluded as irrelevant.

- **Paragraphs 85 and 90–92 of the Longstaff declaration.** Plaintiff argues that these paragraphs contain opinions comparing Pyxis and Ischus that were already excluded by the *Dabuert* order at Dkt. No. 281. Defendant has "withdraw[n] the Ischus-related sentences" in these paragraphs. *See* Dkt. No. 340 at 10 n.3.

- **Paragraphs 11, 174–77, 178–83 of the Longstaff declaration.** In its *Daubert* ruling, the Court excluded testimony from Plaintiff's expert Karl Snow that sought to determine Plaintiff's hypothetical losses under the Pyxis Guaranty had Defendant selected a

5

portfolio consistent with the PCS. "Because the Court excluded Dr. Snow's opinion regarding hypothetical losses, [the Court concluded] Longstaff's opinion criticizing Dr. Snow's analysis is no longer relevant." Dkt. No. 281 at 18. Paragraphs 11, 174–77, and 178–83 of the Longstaff declaration all respond to the claim—no longer in this case—that Magnetar's influence on Putnam's collateral selection for Pyxis caused Pyxis's and FGIC's losses. They are excluded based on relevance and on the Court's *Daubert* decision.

Dolan

The Court's ruling with respect to Plaintiff's motion to strike certain portions of Defendant's expert John Dolan is as follows:

- Plaintiff moves to strike the following paragraphs of the Dolan declaration on the grounds that they respond to opinions of O'Driscoll that Plaintiff no longer intends to offer at trial: paragraphs 153, 167–70, 174, 178, 214. Certain of these opinions refer to testimony of O'Driscoll while others stand on their own and are independently relevant. The following will be stricken: paragraph 153 (fourth sentence and last sentence); paragraphs 174, 214. The Court understands paragraphs 167–70 to be responsive to opinions offered by O'Driscoll. Paragraph 178 does not purport to respond to O'Driscoll but stands on its own (to the extent it is relevant at all).

- The motion to strike paragraph 10 is granted because the testimony was not clearly disclosed and, in any event, in the Court's discretion, the testimony would be cumulative of the fact evidence presented on the same issue.

- The motion to strike paragraph 16, on grounds that it is newly disclosed, is denied but the Court will reserve judgment on relevance until the close of Plaintiff's case.

- The motion to strike paragraph 101 is denied.

- The motion to strike paragraph 107 is granted as to the last sentence which is cumulative of fact evidence that is independently admissible.

- The motion to strike paragraph 113 is granted on the grounds that the testimony is not the appropriate subject for expert testimony and is cumulative of fact evidence.

- The motion to strike paragraphs 14, 84, 98, 105, 108, 121, 123 and Dolan's demonstratives D-161 and D-148, on the grounds that they are argumentative, is denied except that paragraphs 37 and 38 of the Dolan declaration are stricken.

- The remainder of the challenged testimony, which the Court will not strike, reflects the witness's expert opinion based on the facts and information he has reviewed.  Plaintiff is free to challenge those expert opinions on cross-examination.

- The motion to strike paragraphs 96 is granted only with respect to the sentence that begins "It is evident . . . ."

- The motion to strike paragraph 121 is granted.

- The motion to strike paragraphs 156–66 of the Dolan declaration is denied.   The opinion reflected in that section is identical to that expressed in paragraph 24 and Section X paragraphs 127-143 of the Dolan report.  Those paragraphs were not challenged in Plaintiff's *Daubert* motion and the objection on grounds of Rule 702 and 703 is waived.  Moreover, while Plaintiff challenges Dolan's qualifications, this Court has already noted that "'[c]ourts in the Second Circuit liberally construe the expert qualification requirement, and generally will not exclude expert testimony provided the expert has educational and experiential qualifications in a general field closely related to the subject

matter in question.'" Dkt. No. 281 at 24-25 (quoting *I.M. v. United States*, 362 F. Supp. 3d 161, 192 (S.D.N.Y. 2019)). Dolan plainly has the appropriate qualifications.

Bell and Van Tassel

Plaintiff moves to strike the following paragraphs of the Bell and Van Tassel declarations as impermissible lay opinion testimony: Bell paragraphs 69, 117, 120, 126, 141, 146, 156, 157, 158, 179, 182; Van Tassel paragraphs 13, 24, 29, 58, 79. The Court grants the motion to the extent that the following portions are stricken as either impermissible lay opinion testimony or irrelevant to Phase 1 of the trial:

Bell:

- Paragraph 69, the clause "and remains standard market practice today";
- Paragraph 117, the last sentence;
- Paragraph 120, the last clause ("and they understand that these documents supersede earlier marketing materials");
- Paragraph 141, the last two sentences.

Van Tassel

- Paragraph 13;
- Paragraph 24, the second sentence;
- Paragraph 29, the second-to-last sentence;
- Paragraph 58, the last sentence;
- Paragraph 79.

The remainder of the testimony is based on the witnesses' personal knowledge (*see* Fed. R. Evid. 602) or is rationally based on the witnesss' perception, helpful to clearly understanding

the witnesss' testimony and to determining facts in issue, and is not based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702. *See* Fed. R. Evid. 701; *see also United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) (explicating that these requirements of Rule 701 are designed to require first-hand knowledge, to prevent the witness from "merely tell[ing] the jury what result to reach" and to require that a lay opinion be based on reasoning "familiar to the average person in everyday life.") (citations omitted). It is also relevant.

Plaintiff moves to strike the following testimony of Bell and Van Tassel about how they would have acted with respect to events and exchanges that the two allegedly do not recall today: Bell paragraphs 139, 173–79; Van Tassel paragraphs 13, 16, 25, 55, 58, 70. The motion is granted only as to the following paragraphs:

Bell:

- Paragraph 176, last sentence;
- Paragraph 179, third to last sentence and last sentence.

Van Tassel

- Paragraph 13;
- Paragraph 55, last sentence;
- Paragraph 58, last sentence.

The remainder of the testimony is based on the witnesss' personal knowledge (Fed. R. Evid. 602) or is permissible habit or routine evidence (Fed. R. Evid. 406).

Plaintiff also moves to strike various exhibits offered through Bell and Van Tassel. The Court indicated during the conference of June 5, 2020 that it would admit all exhibits at trial subject to a motion to strike. Trans. of 6.5.2020 Conf. at 24–25. Plaintiff may conduct a voir

9

dire with respect to any documents that are objectionable and if no foundation is laid, the exhibits will be stricken.

The motion to strike the reference to certain legal advice received from the general counsel of Putnam in paragraph 74 of the Bell Declaration is denied. Plaintiff may cross-examine Bell on whether his declaration is consistent with his deposition testimony. That Bell may not have precisely testified at his deposition in the form he proposes to testify at trial may be grist for cross-examination. It is not an appropriate basis for a motion to strike testimony of a fact witness.

Skelton

Plaintiff moves to strike testimony from Dana Skelton under Fed. R. Civ. P. 26(a)(2) for failure to provide the required pretrial expert disclosures, as unreliable, and for lack of qualifications under Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 597. The critical questions are whether Skelton is competent to give the testimony and whether the challenged testimony is permissible fact or lay opinion testimony, or impermissible expert testimony; no party disputes that if the testimony is expert, Skelton cannot give it. Plaintiff did not provide disclosure as necessary for expert testimony and Skelton is not qualified as an expert.

Defendant argues that paragraphs 38 through 41 of Skelton's declaration are "classic expert testimony." Dkt. No. 335 at 5. Skelton's declaration contains testimony about how the Loss Coverage Requirement ("LCR") analysis would apply to the actual Pyxis portfolio if FGIC had been given the actual Pyxis portfolio in advance of its decision to insure and had run the LCR analysis against that actual portfolio. *See* Skelton Decl. ¶ 41. Defendant argues that those paragraphs reflect "classic expert testimony"—what an expert analysis would have shown with respect to loss estimates had that expert analysis been conducted at the time. *Id*. Because

Skelton's declaration is not based upon an analysis she conducted or historical evidence that she perceived, Defendant argues that the testimony is not permissible lay testimony but rather expert testimony to which the requirements applicable to expert testimony apply. *Id*. Defendant further argues that Skelton is not competent to testify on the LCR because she is not qualified to do so, and that her opinions are unreliable because she does not recall the details of the Pyxis transaction. Dkt. No. 335 at 7–9. In particular, Defendant points out that at her deposition, Skelton "could not 'really recall all of the workings behind [the LCR model].'" *Id*. (quoting Dkt. No. 237–1 at 15:13–37).

Plaintiff argues that under Rules 602 and 701, a fact witness is permitted to testify about what she would have done had misrepresented facts had been accurately disclosed. *Id*. at 1, 4.

Under Fed. R. Evid. 701, a witness not testifying as an expert can offer an opinion only if that opinion is "rationally based on the witness's perception." That rule creates a limited exception to the general principle that a witness may testify only to a matter of which she has "personal knowledge." The Advisory Committee Notes to Rule 701 reflect that the Rule is intended to permit lay witnesses "to testify to their personal perceptions in the form of inferences or conclusory opinions," "[r]ecognizing that eyewitnesses sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts." *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (citing Fed. R. Evid. 701, Advisory Committee Notes on 1972 Proposed Rules and on 2000 Amendments); *see Leon v. TransAm Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y. Feb. 13, 2020) (LJL). That Rule 701 testimony must be "rationally based on the witness's perception" remains an important limitation. For example, "lay witnesses generally are not entitled to express opinions based on hypothetical questions." 4 Weinstein's Federal Evidence § 701.03

11

(2020).

Plaintiff argues that Skelton's testimony constitutes permissible lay opinion testimony because it does not involve any kind of expert judgment. Plaintiff characterizes the exercise as essentially arithmetic, like adding 1 plus 1. "All she does is *re-size the buckets of assets* to which those LCR results were applied . . . to reflect the differences between Pyxis's actual RMBS Portfolio and the PCS RMBS portfolio." Dkt. No. 341 at 1 (emphasis original). Plaintiff further rejoins that Skelton's declaration is consistent with her deposition testimony, and avers that "[t]he fact that [Skelton] does not recall the 'workings behind' the LCR model . . . is irrelevant," as "[h]er testimony addresses the application of the LCR model's outputs, not the model's detailed internal workings" which she was not responsible for maintaining. Dkt. No. 341 at 5. Defendant hotly disputes the point and others.

The Court would find it useful to have voir dire of Skelton on the point before rendering a decision. Accordingly, the Court reserves judgment and will permit Defendant voir dire of Skelton before making a decision whether to receive the testimony.

O'Driscoll

Defendant moves to strike paragraphs 139 to 141 of O'Driscoll's declaration. In the challenged paragraphs, O'Driscoll opines that Putnam would have been able to construct a portfolio of assets containing 10% prime or seasoned assets without violating the contractual portfolio limitations set forth in the Indenture. Defendant argues that the Court excluded the testimony in its *Daubert* ruling and thus that O'Driscoll should not be able to offer it at trial. Defendant is wrong. In O'Driscoll's expert reports, he offered two related opinions: (1) it would have been possible to construct an alternative portfolio containing 10% prime and/or seasoned assets, … while remaining within the 188 WAS constraint," Dkt. No 167-3 ¶ 188; *see also* 167-

12

58 ¶ 38 (O'Driscoll Rebuttal Report) ("Putnam included no prime RMBS or subprime pre-2005H2 RMBS in the Pyxis portfolio at closing. Putnam did so despite the fact that both prime and seasoned RMBS were available investments for Pyxis, that the could be obtained at spreads that allowed compliance with Pyxis's portfolio limitations."); and (2) "as a general matter, given the general performance of prime and seasoned assets as compared to the unseasoned, subprime assets Putnam … included in the Pyxis portfolio, [a portfolio containing 10% prime or 10% seasoned assets (or some combination of the two)] would have performed materially better." Dkt. No. 167-3 ¶ 191.  The Court excluded the latter testimony but not the former.  Indeed, the *Daubert* motion to exclude testimony regarding RMBS spreads was denied.  Dkt. No. 281 at 12. Defendant may cross-examine O'Driscoll on the reliability of his recollection and his opinion.

Defendant also moves to strike O'Driscoll's testimony at paragraph 149 of his declaration.  In that paragraph, O'Driscoll opines that in 2006, "a meaningful number of potential CDO investors and insurers would require, before committing to participate in a CDO, a detailed target portfolio showing on a line-item basis both the assets already ramped for the portfolio and the assets the manager intended to acquire" and that it was "very important to ensure that such detailed target portfolios accurately reflected the manager's intent with respect to the assets to be acquired, or at least the detailed credit characteristics of those assets, because those target portfolios would be used to model losses on the deal and would guide the recipients' decisions about whether to participate in the CDO and on what terms."  O'Driscoll goes on to state: "The ratings agencies also required such detailed target portfolios to provide credit ratings for the CDO's debt tranches."  Defendant argues that the opinions are newly-disclosed and were not in O'Driscoll's expert report and should be excluded for that reason.  Defendant is partially right.  The first sentence with respect to "CDO investors and insurers" was not disclosed in the

13

expert report and is a new opinion. It is excluded. In addition, O'Driscoll offers no basis for the opinion other than to "aver conclusorily that his experience led to his opinion." *Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp.2d 461, 473 n.2 (S.D.N.Y. 2005); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003).

The second sentence regarding the rating agencies is fairly encompassed within O'Driscoll's report. Based on the Court's ruling, paragraph 149 should be revised to read: "The rating agencies also required detailed target portfolios to provide credit ratings for the CDO's debt tranches. In my experience, it was very important to ensure that such detailed target portfolios accurately reflected the manager's intent with respect to the assets to be acquired, or at least the detailed credit characteristics of those assets, because those target portfolios would be used . . . in the case of the rating agencies to guide their credit ratings." Although there is some force to Defendant's argument that even that revised opinion is backed by little other than O'Driscoll's say-so, that goes more to weight than admissibility and Defendant can cross-examine O'Driscoll on it.

Defendant moves to strike O'Driscoll's opinion in paragraphs 126 to 129 of his declaration, which state that there was no "credit basis for Putnam to have excluded 2005H1 RMBS, even under its [Putnam's] own credit scoring analysis" and that "Putnam's own scoring matix" reflects the market view that "[s]easoned RMBS during this period were generally considered of superior credit quality to new-issue RMBS." Defendant argues that the opinions are new and were not reflected in O'Driscoll's expert reports. Plaintiff does not dispute that the opinions are new but responds that the evidence is not expert but summary. Paragraphs 126–129 are stricken.

Finally, Defendant moves to strike paragraph 125 to the extent it states that one of

Plaintiff's exhibits shows that "Putnam collected CDS spread quotes circulated to Putnam from various Wall Street dealers … dating from June and July 2006." Defendant argues without dispute that the sentence reflects a new opinion. The fourth sentence of paragraph 125 will be stricken. To the extent the document supports the factual point, Plaintiff can refer to it in argument.

The Clerk of Court is respectfully directed to close the pending motions at Dkt. Nos. 334, 336.

SO ORDERED.

Dated: July 1, 2020
New York, New York

_____
LEWIS J. LIMAN
United States District Judge